THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 6520 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER[3]

Before the Court is Plaintiff Jacob W.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying his applications for disability benefits (Dkt. 16: Pl. Mem. in Support of Summ. J.: "Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On December 7, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

judgment (Dkt. 17: Def. Mot. for Summ. J.; Dkt. 18: Def. Mem. in Support of Summ. J.: "Resp.")

I. **Procedural History**

Plaintiff filed his application for disability insurance benefits on October 19, 2017. (R. 167-73.) He alleged that his onset date was August 6, 2015. (*Id.*) His date last insured was December 31, 2021. (R. 1075.)

After a hearing, Administrative Law Judge Kimberly Cromer denied Plaintiff's application on September 19, 2019. (R. 10-29.) The Appeals Council denied Plaintiff's appeal on June 17, 2020 (R. 1-6), and Plaintiff appealed to the district court. (R. 1178.) On July 9, 2021, the District Court remanded the case back to the ALJ. (R. 1170-77.) Specifically, the Court directed the ALJ to provide additional evaluation of Plaintiff's subjective symptoms pursuant to 20 C.F.R. 404.1529, give further consideration of the opinion evidence and prior administrative findings pursuant to 20 CFR 404.15209c, and to give further consideration to the Plaintiff's maximum residual functional capacity, including a rationale for the assessed limitations. (R. 1184-89.)

ALJ Edward Studzinski got the case after remand. He held a second hearing on May 11, 2022, during which Plaintiff, who was represented by an attorney, and a vocational expert testified. (R. 1105-43.) On July 27, 2022 , the ALJ found Plaintiff not

disabled. (R. 1094.) Plaintiff appealed, and it is that matter that is now before the Court.[4] After considering the parties' briefs and evidence, the Court grants Plaintiff's motion to remand and denies the Commissioner's motion to affirm the opinion of the ALJ.

## II. ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since his onset date. (R. 1077.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative joint disease of the ankle, status post motor vehicle accident and left ankle arthroscopy with debridement and synovectomy lateral ligament repair; right shoulder bursitis/tendonitis, status post arthroscopic subacromial decompression; depression, anxiety; and trauma/stressor related disorder. (*Id.*)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 1077-78.) In considering Plaintiff's mental impairments, the ALJ undertook the "Paragraph B" analysis for evaluating mental limitations. The ALJ determined that Plaintiff had moderate limitations in understanding, remembering, and applying information, interacting with others, concentrating, persisting, and maintaining pace and adapting and managing himself. (R. 1078-80.)

---

[4] The Appeals Council later denied review (R. 1184-89), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

3

Before Step Four, the ALJ determined that Plaintiff had the following residual functional capacity:

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in his total ability to sit, stand, or walk throughout an 8-hour workday. The claimant should be allowed to alternate his position between being on his feet standing and/or walking, and sitting, for 1-2 minutes out of every half hour. While doing so, he would not be required to be off task. He should be allowed to use a cane at all times while walking, but not while standing. He can occasionally push and pull with his right upper extremity, and can occasionally operate foot controls. He can never use his right upper extremity overhead. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, balance, and crouch, but he can never kneel, crawl, or climb ladders, ropes or scaffolds. He can frequently use his hands to perform fine or gross manipulation. The claimant is limited to working in non-hazardous environment, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. The claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate such as assembly line work. The claimant can deal with occasional changes in a routine work setting.

(R. 1080-81.)

At Step Four the ALJ found that Plaintiff could not perform his past work as a pipe fitter. (R. 1092.) At Step Five, the ALJ found there were significant jobs in the national economy Plaintiff could perform pursuant to his residual functional capacity including office helper, routing clerk, and mail clerk. (R. 1093.) Therefore, the ALJ found that Plaintiff was not disabled. (R. 1094.)

**III.    Legal Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

5

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: " A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable

6

evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. Analysis

Plaintiff argues the ALJ erred in assessing his residual functional capacity for both his physical and mental impairments. (Pl. Mem. at 2, 10.) He contends that the ALJ's determinations were "untethered to the evidence," and that no logical bridge connected evidence to conclusion. (*Id.*) After considering Plaintiff's arguments, the Court finds that substantial evidence supports the ALJ's decision.

    A.    **The ALJ Supported with Substantial Evidence His Consideration of Plaintiff's Mental Impairments.**

In determining Plaintiff's mental residual functional capacity, the ALJ acknowledged nearly all of the evidence Plaintiff identifies related to his mental impairments. For example, the ALJ noted Plaintiffs testimony about his anger issues, difficulty getting along with others, fear of driving, difficulty completing tasks, and problems with memory and concentration. (R. 1082.) The ALJ discussed Plaintiff's reports to mental health therapy providers that he had experienced flashbacks, anxiety, and poor sleep since his 2015 car accident. (R. 1085.) The ALJ further recognized that Plaintiff's anxiety improved with medication but did not abate completely, and that he continued to complain of problems with mood, anxiety, and stress due to family issues. (*Id.,* R. 1086.)

7

Balanced against evidence of Plaintiff's mental health symptoms, the ALJ discussed Plaintiff's improvement with medication and therapy. (R. 1085.) He noted that by December 2017, Plaintiff reported feeling calmer and sleeping better. (*Id.*) Problems with medication side effects abated with a dosage change and improved (but did not eliminate) Plaintiff's core anxiety. (*Id.*) He was able to travel to Hawaii in 2019 and regularly interact with other people at his daughter's sporting events. (R. 1079.) Plaintiff reported no major stressors but some down moods in 2020, and had overall normal mental status examinations at doctors' appointments. (R. 1086.) While Plaintiff continued to experience some ups and downs in his mood, therapy helped improve symptoms. (*Id.*) By two weeks before Plaintiff's date last insured, Plaintiff exhibited a much brighter affect and positive way of thinking. (*Id.*)

Nonetheless, Plaintiff alleges broadly that the ALJ "failed to explain the basis" for nearly every mental limitation in the residual functional capacity. (Pl. Mem. at 3.) More specifically, he contends that the ALJ erred when determining (1) limitations on Plaintiff's interactions with coworkers, supervisors, and the public; (2) limitations related to Plaintiff's stress; and (3) limitations related to Plaintiff's ability to concentrate, persist, and maintain pace.

With respect to his ability to get along with others, Plaintiff contends that the ALJ did not adequately explain why he determined Plaintiff could occasionally get along with supervisors or co-workers but never interact with the public. (Pl. Mem. at 3-4.) He

8

separately argues that the ALJ erred by assigning only "quantitative" limitations (addressing the length or frequency) on his interactions, when – Plaintiff says – the evidence supported the need for "qualitative" limitations (such as confining them to superficial encounters) as well. (*Id.*)

When conducting the RFC analysis, "an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). But crucially, this also means an ALJ need not include limitations that are not supported by the medical record. *See, e.g.*, *Deborah M.*, 994 F.3d at 791 (concluding the ALJ properly omitted manipulative limitation from RFC because "[n]o doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation").

The ALJ explained that he found Plaintiff to have only moderate limitations in interacting with others based on evidence that showed improvement in Plaintiff's mood with treatment but residual issues with anxiety, anger, and irritability. (R. 1079.) The ALJ noted that despite his complaints, Plaintiff was able to interact with people at his daughter's travel softball games, during multiple trips to Hawaii, and during his three-month attempt to return to work.[5] Therefore, the ALJ assigned Plaintiff a residual

---

[5] Plaintiff's unsuccessful attempt at returning to his prior job as a pipe-fitter ended because of pain, not his mental health impairments. (R. 1079.)

9

functional capacity that limited the amount of his interactions with supervisors and coworkers, and eliminated his interactions with the public.

There is no evidence in Plaintiff's medical record concerning the need for a qualitative limitation. Instead, he asks the Court to intuit a qualitative limitation from his reports of "PTSD symptoms, anxious mood, and problems with basic interactions due to anger/anxiety and reactions to stress." (Pl. Mem. at 6.) But this is not enough to support additional limitations. *See, Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). In *Reynolds*, the Seventh Circuit found no error in the ALJ's omission of qualitative limitations on claimant's interactions with her supervisor and coworkers. The Court explained that no evidence supported such a limitation, despite claimant's doctor opining that claimant would "likely struggle to get along with her supervisors and coworkers due to her mental health issues." *Id.*

The *Reynolds* Court further explained that treatment notes reflecting claimant's "aggressive or violent behavior, decreased energy, relationship problems, sleep disturbances, and suicidal thinking/history of attempt(s)" did not amount to medical evidence that the residual functional capacity should have included a qualitative interaction limitation. *Reynolds,* 25 F.4th at 474. It went further, explaining that "the ALJ was not required to impose such a limitation in the RFC, much less explain her decision not to. Put another way, evidence that [claimant] sometimes struggles to interact appropriately with others does not mean an occasional interaction limitation was

10

insufficient in this case." *Id.* Notably, the *Reynolds* court also agreed that this evidence supported occasional interactions with supervisors and coworkers but no interactions with the general public.[6]

Like in *Reynolds*, not only is the medical record silent on whether Plaintiff has qualitative limitations, but Plaintiff's treating doctor, Akshatha Shetty, M.D., opined that he could work in proximity to others without being distracted. (R. 1360.)[7] Plaintiff's arguments are no more that a request that the ALJ should have weighed the evidence differently and imposed different limitations in the residual functional capacity. This is not a basis for remand.

Relatedly, Plaintiff argues that the ALJ erred by failing to include stress-related limitations in the residual functional capacity determination. (Pl. Mem. at 7.) He states – without authority – that "limitations on task and decision complexity and durational interaction restrictions do not speak to stress, while the ability to handle occasional workplace changes without assembly line work do not either." But these types of

---

[6] Plaintiff's cite to *Kischer L. C. v. Kijakazi*, No. 21 C 1350, 2023 WL 2711610, at *4 (N.D. Ill. Mar. 30, 2023) that case does not change the Court's analysis. In *Kischer*, the Court held that the ALJ did not provide adequate support for his conclusion that Plaintiff's moderate limitations interacting with others did not extend to supervisors. But in *Kischer*, the ALJ was silent on Plaintiff's ability to interact with supervisors; here the ALJ specifically determined that Plaintiff had separate limitations in interacting with coworkers, supervisors, and the public.

[7] Plaintiff separately argues that the ALJ wrongly discounted Dr. Shetty's opinion, including that Plaintiff's interactions with people would be impacted by his mood, anxiety, and PTSD. But even if the ALJ had given it more weight, Dr. Shetty did not opine that Plaintiff needed a qualitative limitation on his interactions with others.

11

limitations plainly relate to reducing workplace stress. The Court easily understands that simple work, reduced interpersonal interactions, and the elimination of the pressure of keeping up with an assembly line are obvious ways to make work less stressful and reduce frustration. *See, e.g., Rebeca J. v. Kijakazi,* No. 20 C 3167, 2023 WL 2895876 at *5 (N.D.Ill. April 11, 2023) (affirming residual functional capacity that accounted for stress by limiting claimant to simple work-related decisions, occasional changes in work setting, no assembly line work, and no interaction with the public.)

Finally, the Court finds that the ALJ supported Plaintiff's moderate limitations in concentration, persistence and pace. The ALJ explained that he accounted for Plaintiff's difficulties in this area by limiting Plaintiff to understanding, remembering, and carrying out simple instructions, using judgment to make simple decisions, and dealing with occasional change in a routine work setting.

Plaintiff argues that these "boilerplate" limitations do not adequately account for his memory and learning issues or his problems with concentration. (Pl. Mem. at 7.) But the ALJ specifically accounted for the deficiencies Plaintiff cites. The ALJ acknowledged Plaintiff's testimony about his concentration and memory problems, flashbacks, and racing thoughts. (R. 1079.) Balanced against this evidence, the ALJ pointed out that Plaintiff only stopped working at a skilled job because of physical pain, not mental impairments. (*Id.*) The ALJ noted that Plaintiff was able to concentrate well enough to travel and attend sporting events for his children. (*Id.*) He also discussed the results of

12

Plaintiff's speech and language evaluation, which assessed him with mild cognitive linguistic deficits and recommended speech language services. (Id.) As the ALJ noted, Plaintiff attended five sessions and then was discharged with improved memory, although mild immediate memory deficits persisted. (*Id.*) The ALJ explained that the mental limitations in the residual functional capacity accounted for these issues.

Courts have held that similar limitations to those at issue here can accommodate a claimant's memory impairment as well as more general moderate limitations in concentration, persistence and pace. For example, in *Ramos v. Berryhill*, No. 16 CV 9378, 2018 WL 4005191, at *3 (N.D. Ill. Aug. 22, 2018) (citation omitted), the Court held that a residual functional capacity "limited to performing simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and few, if any, workplace changes, accommodated the claimant's memory impairments by including limitations in concentration, persistence and pace. Id. at *8. See also, Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming the ALJ's residual functional capacity restrictions of simple, repetitive tasks and limited interactions with others to account for the claimant's moderate limitations in concentration, persistence, and pace.)

Plaintiff's argument that his memory and concentration difficulties supported additional restrictions, such as additional time off-task, is merely a disagreement with the way the ALJ weighed the evidence. The Court concludes that Plaintiff has not

13

provided a sufficient basis to disturb the ALJ's conclusions regarding memory and concentration.

      **B.**    **The ALJ Supported the Physical Residual Functional Capacity with Substantial Evidence**

Plaintiff argues that the ALJ made two errors with respect to his physical residual functional capacity. First, he contends that the record supports his need to elevate his legs throughout the day. (Pl. Mem. at 10.) Second, he argues that the ALJ's limitation to frequent fine and gross manipulation was not supported by substantial evidence.

The ALJ explained that the totality of the medical evidence does not support a limitation for Plaintiff to elevate his legs because the recommendation is mentioned only twice in seven years of medical records. (R. 1087.) The first mention is from the emergency department in August 2015, immediately after Plaintiff's car accident. (*Id.*) The second is from four months after Plaintiff's date last insured, where Plaintiff reported elevating both of his feet. (*Id.*) In determining that these two mentions were not a sufficient basis to support elevating Plaintiff's feet, the ALJ explained he found no evidence of an underlying condition to support such a limitation. (*Id.*)

To that point, the ALJ discussed in depth the medical evidence concerning Plaintiff's ankle problems. He noted Plaintiff's off-and-on ankle pain, two ankle surgeries, his occasional use of a brace when walking, an 18-month gap in treatment, and X-rays that showed mild degenerative changes in his ankle joint (R. 1082-83.) The

14

ALJ further recognized that ankle injections and physical therapy helped Plaintiff's pain. I(*Id.*) In consideration of Plaintiff's continued pain and intermittent use of a cane to ambulate, the ALJ limited his residual functional capacity to work that allowed him to alternate between sitting and standing and use his cane when walking. (R. 1084.)

Plaintiff argues that elevating his leg was "commonsense pain relief" for an individual with ankle problems. (Pl. Mem. at 11.) He contends that there was no reason to expect him to report to his doctors that he elevated his legs because there was nothing to be done about the problem. (*Id.*) Plaintiff cites *Robinson v. Berryhill*, No 16 C 5152, 2017 WL 2215022, *4 (N.D. Ill., May 19, 2017) for the proposition that he did not need to "consistently" tell his doctors that he was elevating his legs before the ALJ could find an underlying medical condition that supported the limitation.

But Plaintiff did not "inconsistently" tell his doctors that he elevated his legs for pain relief; he never reported doing so. And although Plaintiff's treating podiatrist, Kyle Peterson, DPM, opined three months before the date last insured that Plaintiff needed to elevate his legs, Dr. Peterson never made such a recommendation in six years of treatment notes. *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) (ALJ permissibly discounted the plaintiff's testimony about elevating his legs where "there is no record evidence from [the plaintiff's] treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that [the plaintiff] reported.").

The ALJ explained and supported with substantial evidence the ankle-related limitations he included in the residual functional capacity. These limitations included a sit-stand option, use of a cane when walking, and other postural limitations. Therefore, viewing the record as a whole, the ALJ's failure to include leg elevation in Plaintiff's residual functional capacity is supported by substantial evidence. As the Supreme Court has noted, "[s]ubstantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). The ALJ's decision satisfies this threshold.

The ALJ also supported with substantial evidence his determination of Plaintiff's manipulative limitations. As the ALJ noted, while Plaintiff testified that his problems with his hands dated back to 2010, he did not begin complaining about hand pain to his doctors until late 2021 – just months before his date last insured. Notably, the state agency doctors who reviewed the medical record found that Plaintiff had no fine or gross manipulative limitations (R. 67-94.) The ALJ gave great weight to these opinions but found that the evidence supported some additional limitations. (R. 1088

After considering testing that revealed mild mononeuropathy (single nerve damage), successful left-sided carpel tunnel surgery, and mild carpel tunnel in Plaintiff's right hand, the ALJ determined that he was limited to frequent fine and gross manipulations. (R. 1081, 1085.) In response, Plaintiff offers a laundry list of

16

symptoms and a few test results and suggests that they support greater limitations. (Pl. Mem. at 12.) Plaintiff points to no evidence to support his speculation that the specific objective findings caused any limitations greater than those in the residual functional capacity. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (unpublished) (holding that the claimant must "establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work").

        **C.**       **The ALJ's Subjective Symptom Analysis was not Patently Wrong**

Finally, the ALJ properly accounted for Plaintiff's subjective symptoms. An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb an ALJ's subjective symptom evaluation that is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Contrary to Plaintiff's contention, the ALJ fully explained why he did not fully credit Plaintiff's allegations that he had work-preclusive limitations. Specifically, the

17

ALJ considered Plaintiff's complaints of pain, benefits obtained through treatment with physical therapy, injections, and surgery, travel to Hawaii on several occasions, attendance at his daughter's sporting events, and (with respect to his mental impairments), his ability to work at a skilled job for three months. (R. 1082-83.) The ALJ did not discount Plaintiff's allegations entirely; he credited many of Plaintiff's complaints and accounted for them in the residual functional capacity, just not to extent Plaintiff. In short, the ALJ's analysis was not patently wrong, and the Court will not overturn it.

## CONCLUSION

For the reasons explained above, the Court grants Defendant's motion for summary judgment (Dkt. 17) and denies Plaintiff's motion to remand the ALJ's decision. (Dkt. 16.)

**SO ORDERED.**

ENTER:

*Laura K. McNally*

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: June 27, 2025**